UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| JAMES A. SMITH, JR., | : | Case No. 3:10-cv-293 |
|---|---|---|
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS AFFIRMED; AND (2) THIS CASE IS CLOSED

This is a Social Security disability benefits appeal. At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

not entitled to disability insurance benefits ("DIB") or Social Security Income ("SSI").

(*See* Administrative Transcript ("Tr.") 18-33).

## I. BACKGROUND

Plaintiff protectively filed an application for DIB and SSI on October 4, 2004,

alleging a disability onset date of October 1, 2002, later amended to January 1, 2006, due

to chronic obstructive pulmonary disease, hepatitis C, cirrhosis, depression, and alcohol

and drug abuse. (Tr. 56-58, 21, 1094-1096, 25). The application was denied initially and

on reconsideration. (Tr. 41, 45, 1098, 1102). Plaintiff timely filed for a *de novo* review

of his claims and received a  hearing on March 20, 2008, before ALJ Thomas R.

McNichols, II. (Tr. 48, 1111-1155). Plaintiff, represented by counsel, Plaintiff's case manager, and a vocational expert appeared and testified. (Tr. 21).

On July 16 , 2008, the ALJ issued a decision finding Plaintiff not disabled and therefore not entitled to benefits. (Tr. 18-33). Plaintiff sought Appeals Council review, which was denied on May 20, 2010, making the ALJ's decision the final decision of the Commissioner. (Tr. 16-17, 1107-1110, 10-13). Plaintiff subsequently brought this action in federal court under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying him DIB and SSI.

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2005, and thus no longer alleges disability prior to the expiration of his insured status. The claimant's Title II application for disability insurance benefits must consequently be denied.

2. The claimant has not engaged in substantial gainful activity since January 1, 2006, the amended alleged disability onset date (20 CFR 416.971 et seq.).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease, hepatitis C, a history of cirrhosis, a history of depression, ongoing cannabis abuse, and a history of alcohol and cocaine abuse, in reported remission (20 CFR 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). However, he is restricted to lifting no more than 10 pounds and is precluded from having occupational exposure to pulmonary irritants and from climbing ladders, ropes, or scaffolds or

-2-

otherwise working around hazards. The claimant is also restricted to performing low stress jobs which do not involve production quotas or complex or detailed instructions.

6.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

7.  The claimant was born on May 19, 1956, and was 49 years old on his amended alleged disability onset date. He subsequently turned 50 years of age for Social Security purposes on Mary 18, 2006, (the day prior to the actual anniversary of his birth in accordance with 20 CFR 416.120) and is now 52 years of age, which is defined as an individual "closely approaching advanced age" (20 CFR 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision (20 CFR 416.920(g)).

(Tr. 25-33).

Plaintiff makes two arguments on appeal: (1) that the ALJ failed to find that Plaintiff met or equaled Listing 12.05C; and (2) that the ALJ erred in rejecting the opinion of Plaintiff's treating physician and, consequently, in formulating Plaintiff's residual functional capacity ("RFC"). Each assignment of error will be addressed in turn.

## II. LEGAL FRAMEWORK

The Court's task on appeal is two-fold: to determine whether the ALJ employed

the correct legal criteria in reaching his decision and to determine whether the ALJ's non-

disability finding is supported by substantial evidence. 42 U.S.C. § 405(g); *Bowen v.

Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In this task, the Court

considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

If substantial evidence supports the ALJ's denial of benefits, that finding must be

affirmed, even if substantial evidence also exists in the record upon which the ALJ could

have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal
> merely because substantial evidence exists in the record to
> support a different conclusion. The substantial evidence
> standard presupposes that there is a "zone of choice" within
> which the Commissioner may proceed without interference
> from the courts. If the Commissioner's decision is supported
> by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The ALJ must also apply the correct legal standards and follow the

Commissioner's regulations in coming to a decision. Failing to employ the correct legal

criteria will typically result in reversal, even when the ALJ's opinion is otherwise

supported by substantial evidence. *Bowen*, 478 F.3d at 746.

-4-

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to DIB and SSI. 20 CFR §§ 404.1512, 416.912. Plaintiff must present sufficient evidence to show that, during the relevant time period, he was "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c.

## A. First Assignment of Error

For his first assignment of error, Plaintiff argues that the ALJ erred in determining that Plaintiff did not meet or equal Listing 12.05C for mental retardation. 20 CFR Part 404, Subpart P, Appendix 1, § 12.05C contains three requirements. Plaintiff must show he has: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation or function. *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 697-98 (6th Cir. 2007). If Plaintiff meets the requirements of this Listing, he is disabled and owed benefits. 20 CFR §§ 404.1520(a)-(f), 416.920(a)-(f); *Newland v. Apel*, 182 F.3d 918 (6th Cir. 1999).

Plaintiff argues that he satisfies the second element because he had valid IQ scores between 60-70. (Doc. 10 at 11-12; Tr. 173). He asserts that he meets the third element because the ALJ found that he had various other impairments - pulmonary problems,

-5-

cirrhosis, hepatitis C, depression - that necessitated, as evidenced by his RFC

determination, significant work-related limitations - restrictions to low stress jobs and

against lifting more than 10 pounds, exposure to pulmonary irritants, and climbing

ladders, ropes, or scaffolds or otherwise working around hazards. (Doc. 10 at 12-13; Tr.

26). It was the first element that doomed Plaintiff before the ALJ.

The ALJ did not believe that Plaintiff showed deficits in adaptive functioning that

initially manifested before his 22nd birthday. The ALJ's reasoning is important:

> While the claimant is not a high school graduate, he has
> sufficient intelligence and has manifested sufficient academic
> skill to earn a GED. He performed semi-skilled work in the
> relevant past as a carpet layer's helper and as a sales clerk and
> has also held a number of unskilled jobs over a protracted
> period. He lives alone and is able to perform all household
> tasks necessary for him to live independently. He was able to
> drive a car until his license was suspended due to multiple
> DUI offenses. By any measure, this demonstrated level of
> day-to-day adaptive functioning is wholly inconsistent with a
> diagnosis of even the mildest form of mental retardation.
> Medical Listing 12.05C consequently has no application in
> this case under the Sixth Circuit's holding in *Foster v. Halter*,
> 27[9] F.3d 348 (6th Cir. 2001), which established that section
> 12.05C applies only in cases of actual mental retardation.
> Therefore, the claimant does not have a Listing-level
> cognitive disorder.

(Tr. 26).

Plaintiff attacks the ALJ's analysis as based on inaccurate facts and no scientific,

medical evidence. (Doc. 10 at 13). Plaintiff asserts that, instead of having sufficient

academic skill and intelligence to earn a degree, he was in special education classes

-6-

during school (Tr. 174), that testing by Dr. Bond, a psychologist who examined Plaintiff at the state Bureau of Disability Determination's request, revealed that he possessed grade school level abilities (Tr. 425), and that, contrary to his confused testimony at the hearing cited by the ALJ, Plaintiff told Dr. Bonds that he did not obtain a GED, but went to school only through the 8th grade (Tr. 422). (Doc. 10 at 14-15). Plaintiff points out that, rather than living alone and independently, he lives in a permanent housing arrangement with on-site supportive services for those who are seriously mentally ill and chronically homeless. (Tr. 146). Finally, Plaintiff argues that the ALJ ignored Dr. Bonds' opinion, which indicated that Plaintiff had moderate limitations in academic skills and work skills, representing deficits in adaptive functioning. (Doc. 10 at 14).

Despite Plaintiff's thorough argument, there is substantial evidence supporting the ALJ's decision on this issue. First, the ALJ cannot be faulted for a mix up - if there indeed is one - in Plaintiff's testimony regarding his academic accomplishments. Secondly, the ALJ correctly described Plaintiff's work history and daily activities (Tr. 1148, 426). Perhaps most importantly, the very report that Plaintiff champions - the opinion of Dr. Bonds - tends to support the ALJ's analysis. Dr. Bonds did not find Plaintiff to have any marked limitations in adaptive functioning, finding him capable of performing basic self care and daily living skills, maintaining relationships, understanding directions, maintaining attention, working at an adequate pace, and completing tasks in a timely manner. (Tr. 426). The ALJ's finding that Plaintiff did not meet or equal Listing 12.05 because he did not show deficits in adaptive functioning is supported by substantial evidence and is affirmed.

## B.  Second Assignment of Error

Plaintiff's second assignment of error relates to the ALJ's handling of Plaintiff's

treating physician's opinion and its effect on his RFC formulation.  Plaintiff alleges that

the ALJ mistakenly downgraded the opinion of Plaintiff's physician, Dr. Davis, and then

improperly cobbled together Plaintiff's RFC as a compromise between Dr. Davis' opinion

and other medical evidence.  (Doc. 10 at 17, 18).

An ALJ must weigh a treating physician's opinion in accordance with 20 CFR §§

404.1527 and 416.927.  In general, the opinion of a treating physician is given greater

weight than that of a non-treating physician.  20 CFR §§ 404.1527(d)(1), 416.927(d)(1).

This is because treating physicians:

> are likely to be the medical professionals most able to provide
> a detailed, longitudinal picture of [the claimant's] medical
> impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual
> examinations, such as consultative examinations or brief
> hospitalizations.

20 CFR §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ must give controlling weight to a treating physician's opinion if he finds

it "well-supported by medically acceptable clinical and laboratory diagnostic techniques"

and "not inconsistent with the other substantial evidence in [the] case record." *Id.*  If the

opinion does not meet these requirements, however, the ALJ's task is not complete; as

Plaintiff notes, the ALJ must still determine the ultimate weight the opinion deserves by

applying certain factors found in 20 CFR §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6),

namely: the length of the treatment relationship and the frequency of examination; the

extent of the treatment relationship; the nature and extent of the relevant evidence that the

treating physician presents supporting his opinion; the consistency of the opinion with the

record as a whole; the treating physician's specialization; and any other factor the

claimant presents that tends to support or contradict the opinion.

In addition, an ALJ's decision denying benefits "must contain specific reasons for

the weight given to the treating source's medical opinion, supported by the evidence in

the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." Soc. Sec. R. 96-2p. This rule compels an ALJ to explain his

decision to a lay claimant who may not understand why he is being denied disability when

his own doctor believes his to be disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

544 (6th Cir. 2004). It also "ensures that the ALJ applies the treating physician rule and

permits meaningful appellate review of the ALJ's application of the rule." *Id.*

In April 2006, Dr. Davis considered Plaintiff unable to work for nine to eleven

months due to various ailments. The ALJ did not give this statement much support in

Plaintiff's favor, since, by its terms, it does not contemplate Plaintiff to be disabled.

However, two years later Dr. Davis considered Plaintiff totally disabled. (Tr. 1091-1093).

The ALJ correctly cited the law relating to treating physician opinion. He refused to give Dr. Davis' opinion controlling weight because it conflicted with the medical record and the opinions of consulting physicians. (Tr. 28). While Dr. Davis writes of Plaintiff's significant abdominal pain that limits him to only 15 minutes of standing, treatment notes from 2007 revealed Plaintiff healing fairly well after hernia surgery and abdominal imaging scan revealed no significant problems. (Tr. 795, 807, 982, 900, 894, 899, 906). Though Dr. Davis states that Plaintiff's mental health problems leave him unable to sufficiently maintain concentration and social interaction to keep a job, Dr. Bonds found precisely the opposite, noting that Plaintiff got along with his co-workers, maintained good relationships, and was not significantly limited in maintaining attention. (Tr. 426). Importantly, while Dr. Davis was Plaintiff's family physician, Dr. Bonds and the physicians opining on his healing abdomen were specialists in their fields. The ALJ was justified in not giving Dr. Davis' opinion controlling or even substantial weight.

Nevertheless, in formulating Plaintiff's RFC, the ALJ did indeed grant Dr. Davis' opinion appreciable deference. Rather than being improper, as Plaintiff posits, the ALJ's compromise between Dr. Davis' view of disability and the state agency physician's belief that Plaintiff could perform medium work - resulting in an RFC restricting Plaintiff to light work - was perfectly acceptable, and actually to Plaintiff's benefit.

Finally, Plaintiff maintains that the ALJ wrongly employed other opinion evidence dating from before Plaintiff's amended onset date in minimizing Dr. Davis' opinion and creating the RFC. This is hardly a sin, as the ALJ comprehensively, and correctly, considered all of the relevant evidence in making his finding. (Tr. 26-27).

In sum, substantial evidence supports the ALJ's decision regarding Plaintiff's RFC and the weight accorded to Dr. Davis' opinion. The ALJ considered all the evidence in the record and fashioned an RFC that took account of all of the medical evidence and physician opinion. His decision is affirmed.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision that Plaintiff was not entitled to disability insurance benefits, a period of disability, or Social Security Income is supported by substantial evidence, and it is hereby **AFFIRMED**. As no further matters remain pending for the Court's review, this case is closed.

**IT IS SO ORDERED.**

Date:  9/6/11

Timothy S. Black
United States District Judge